# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# Wheeling

**RUTH BERTRAND,**

        Plaintiff,

v.                                  **CIVIL ACTION NO. 5:21-CV-35**
                                         Judge Bailey

**MARSHALL COUNTY COMMISSION,**
**TERRY McDIFFITT,** and
**JANET PEST,**

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS

Pending before this Court is Defendants' Motion to Dismiss Amended Complaint [Doc. 11], filed June 7, 2021. On June 21, 2021, plaintiff filed a response in opposition to the Motion. [Doc. 13]. On June 29, 2021, defendants filed a reply. [Doc. 14]. Accordingly, the Motion is now fully briefed and ripe for decision. For the reasons that follow, this Court will grant the motion and dismiss this case.

## BACKGROUND

This case arises out of alleged violations of plaintiff's First Amendment rights pursuant to 42 U.S.C. § 1983. The plaintiff in this case was employed by defendant Marshall County Commission, where she worked with defendant McDiffit, who was County Assessor, and defendant Pest, who was the Clerk of Court of Marshall County. As alleged in the Complaint, the Commission "maintained a custom and pattern of allowing public officials to mix political activity with their official public duties," which, in the context of this case, included McDiffit's campaign to be reelected County Assessor. [Doc. 8 at ¶ 10].

1

According to the Complaint, McDiffit "set upon a course of abuse and bullying toward certain County employees, including Plaintiff," who he perceived did not support him in the election. [Id. at ¶ 18]. This included defendant Pest confronting plaintiff about Facebook posts she believed plaintiff had posted supporting McDiffit's opponent, Eric Buzzard, as well as McDiffit "flip[ping] her the finger" behind her back when she walked by, and plaintiff being warned by Pest to not say anything negative about McDiffit. [Id. at ¶¶ 19–20].

The tensions between plaintiff and McDiffit came to a head on March 9, 2020, when, while helping another employee, plaintiff asked McDiffit "if she could take the empty box which was sitting outside the door to the Assessor's office, to which McDiffit repled, 'It's not my box.'" [Id. at ¶ 21]. Believing this to mean the box might belong to someone else, plaintiff walked away from McDiffit who, "unprovoked, walked up behind her and Ms. Carney, grabbed Plaintiff by the arm, squeezing it, yelling 'you better shut your f...ing mouth, I'm sending my attorneys to get you!" [Id.]. Following this event, plaintiff filed a criminal charge of battery against McDiffit with the Sheriff's Office of Marshall County. [Id. at ¶ 23].

After that event, McDiffit began harassing plaintiff online and plaintiff was led to believe that McDiffit would not be allowed in the County Clerk's Office. [Id. at ¶¶ 24–25]. When McDiffit nonetheless came into the Clerk's Office, plaintiff called the County administrator, Betsy Frohnapfel, then went to defendant Pest to discuss the matter. [Id. at ¶¶ 26–24]. Defendant Pest proceeded to yell and berate plaintiff, causing plaintiff to experience a panic attack; at that time plaintiff began a medical leave, which was extended by her physician several times and during which her physician advised her that "the

2

harassing and abusive treatment [plaintiff] was experiencing at work due to her political speech, affiliation, and beliefs was exacerbating her panic attacks." [Id. at ¶¶ 27–31]. During a May 14, 2020, phone call, defendant Pest informed plaintiff that she was not considered on medical leave and implied that she expected plaintiff to drop the criminal charges against McDiffit before she could return to work. [Id. at ¶ 32]. After some further correspondence without response from defendant Pest, plaintiff's counsel eventually informed defendants that plaintiff would not be returning to work, believing she had been constructively discharged. Plaintiff filed suit in this Court on the basis of federal question jurisdiction on March 8, 2021; the Amended Complaint brings claims for involuntary termination or constructive discharge in violation of her First Amendment rights and under § 1983, as well as pendent state claims for assault and battery against McDiffit, two counts for wrongful discharge in violation of state law, a claim for failure to accommodate her disability, and a defamation claim against McDiffit and Pest.

## **LEGAL STANDARDS**

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); *see also* ***Giarratano v. Johnson***, 521 F.3d 298, 302 (4th Cir. 2008) (applying the ***Twombly*** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. ***Edwards v. City of Goldsboro***, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. *Anheuser-Busch, Inc. v. Schmoke*, 63 F.3d 1305, 1312 (4th Cir. 1995). In *Twombly*, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Twombly*, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

## DISCUSSION

Count I of the Amended Complaint brings a claim pursuant to 42 U.S.C. § 1983, alleging plaintiff was wrongfully terminated in violation of her First Amendment rights. Plaintiff's argument is that she was wrongfully terminated (or constructively discharged) in retaliation for her political speech and beliefs, namely, supporting McDiffit's political rival in an election for county assessor. "Section 1983 allows for a plaintiff to assert a claim against any 'person' who, acting under color of state law, 'depriv[ed] [another] of any rights, privileges, or immunities secured by the Constitution.' 42 U.S.C. § 1983. A plaintiff seeking to bring a claim under § 1983 must meet two requirements: (1) the conduct complained of was committed by a person acting under color of law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured to him by the Constitution and the laws of the United States. *See Wirth v. Surles*, 562 F.2d 319, 321 (4th Cir. 1977)

(citing *Monroe v. Pape*, 365 U.S. 167 (1961))." *Taylor v. Ohio Cty. Comm'n*, No. 5:17-CV-148, 2017 WL 5761610, at *3 (N.D. W.Va. Nov. 28, 2017) (Bailey, J.).

"To determine if a public employee has a cognizable First Amendment claim for retaliatory discharge, we apply a test derived from *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), in which we consider: ['](1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's termination decision.['] *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)." *Billioni v. Bryant*, 998 F.3d 572, 576 (4th Cir. 2021).

In order to consider the above factors, this Court must determine what speech, as alleged in the Complaint, was the basis for her termination. Despite plaintiff's assertion that the involuntary termination or constructive discharge was due to her political support of Buzzard and her statements to that effect on Facebook, the allegations in the Complaint point instead to the criminal charges plaintiff filed against McDiffit. When plaintiff called defendant Pest regarding her medical leave, she was told: "'you know the "situation" and what you have to do,' which Plaintiff understood to mean that Defendant Pest expected her to dismiss the charges against Defendant McDiffit before she could return to work." [Doc. 8 at ¶ 32]. Despite plaintiff's arguments otherwise, the Complaint does not plausibly allege that her termination was due to her statements on Facebook supporting Buzzard. Following a confrontation with defendant Pest, plaintiff began medical leave due to panic

attacks. Although defendant Pest asserted that plaintiff's medical leave was not valid, it appears from the alleged conversation that Pest was upset with plaintiff for not returning to work, rather than preventing her from returning. And though plaintiff alleges that she understood the above comment about the "situation" to imply she was expected to drop the criminal charges before she could return, nothing in that conversation indicates that she was prevented from returning because of her political affiliation or previous statements.

Taking the allegations as true, the Complaint shows that plaintiff's termination was due to either her medical condition, which defendant Pest apparently believed was invalid, or due to plaintiff's refusal to drop criminal charges against McDiffit, but not due to the earlier political statements on Facebook or in the office. As plaintiff points out as the basis for Count V of the Complaint, defendants actions regarding her medical leave may be unlawful; however, they are not relevant to the § 1983 First Amendment claim.

On the other hand, the filing of a lawsuit can be protected activity. "'If public employee litigation is protected by the First Amendment at all, it must be because the lawsuit is of a character that involves the 'public employee speak[ing] . . . as a citizen upon matters of public concern. . . .'" *Baker v. Mecklenburg Cty.*, 853 F. Supp. 889, 893 (W.D.N.C. 1994), aff'd, 48 F.3d 1215 (4th Cir. 1995) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983). "Personal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." *Stroman v.*

*Colleton Cty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) (citing *Connick*, 461 U.S. at 147 (1983)).

Here, the Court finds that the criminal charges plaintiff filed against McDiffit was not speech about a matter of public concern. While a criminal charge for battery is a fairly serious "personal grievance," it is not a matter of public concern: the lawsuit was not about the election, the political corruption alleged in this case, or the alleged partisan political animosity. While plaintiff asserts that defendant Pest's implication that plaintiff must drop the charges before returning to work "implicated Plaintiff's political affiliation, beliefs, and speech (i.e., supporting McDiffit's candidacy) as a condition of her employment," that connection is tenuous. As alleged, the battery occurred after a disagreement over taking an empty box, a disagreement which was perhaps exacerbated by Bertrand and McDiffit's political differences. Accordingly, the Complaint does not allege facts which meet the test set forth in *McVey* and Count I of the Complaint should be dismissed for failure to state a claim.

This case is in this Court on the basis of federal question jurisdiction, based on the § 1983 claim in Count I. The remaining claims are in front of this Court on the basis of pendent jurisdiction. Pendent jurisdiction

> need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted). The *Gibbs* Court further stated that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id. See also Fox v. Custis*, 712 F.2d 84 (4th Cir. 1983) (In the context of a suit against state corrections employees, Court found that when § 1983 claims were dismissed, the district court should have exercised its discretion not to decide pendent state law claims). Here, as the only federal claim is being dismissed before trial, the Court finds it is appropriate to dismiss the state claims as well.

## CONCLUSION

Upon consideration of the above, Defendants' Motion to Dismiss Amended Complaint **[Doc. 11]** is hereby **GRANTED**. Count I of the Complaint is hereby **DISMISSED WITH PREJUDICE** and the remaining state law claims are hereby **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to **STRIKE** this matter from the active docket of this Court and enter judgment in favor of defendants.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this Order to all counsel of record herein.

DATED: July 14, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE